with the next argued case is number 171005, Quality Edge Incorporated against Rolex Corporation. Mr. Lancer, when you are ready. Good morning, your honors. My name is Joseph Lancer with Rolex Corporation. May it please the court, I'd like to reserve three to five minutes for rebuttal. Okay. Your honor, this is an appeal for a patent infringement case pending in the Western District of Michigan. Based on this appeal, it is based upon the district court's abuse of discretion by granting a permanent injunction at the district court level. And I'd like to set forth in our brief, we set forth numerous issues and errors that led to that granting of the permanent injunction, but I'd like to focus specifically on three of them today, unless the panel has questions about any others. Namely, I'd like to start with the incorrect claim construction that the district court came up with, the incorrect granting of the motion for summary judgment of infringement, and then finally the preclusion of all discovery, including then the permanent injunction itself, which was not based upon factual requirements set forth by this court. The disputed phrase at the district court level is a generally horizontal and perforate top wall, which is found in each of the independent claims 1 and 42 of the 224 patent. The district court defined this to mean as defined by a generally horizontal top wall, wherein any perforations in the top wall are hidden from a view underneath the eaves. We believe that that claim construction is incorrect as a matter of law. There is absolutely no support in the specification, in the intrinsic record as a whole, to support that construction. In fact, there is nothing at all in the intrinsic record that says or teaches anything about hiding any perforations in the top wall, let alone perforations in any wall. The specification is clear that the soffit panel that is disclosed in the specification and claimed in the claims hides angled perforate side walls in their entirety based upon the angle of the side walls that are created in this trapezoidal shape. I agree with you that the figures show no perforations in the top wall. It's clean of perforations. And then the spec, the thrust of the spec is really devoted to the idea, the invention of containing, of having all of the perforations in the side walls and not having perforations in the top wall. Then there's this one little moment in the spec where it says the top wall is substantially imperforate. And so that's the moment in the spec where there's maybe some ambiguity now and that the district court seemed to rely on for the notion that, well, now when we have a claim limitation that says generally horizontal imperforate top wall, maybe that adverb generally is modifying not only horizontal but it's also modifying imperforate because of what you said in column three with substantially imperforate. Could you explain how we should understand that usage of substantially imperforate in column three? Absolutely. I'd like to make two points with regard to that. And specifically, the portion you're referring to, I believe, is column three beginning on line 33. In the very beginning of that sentence it says, in the example illustrated in figures one through five, the top wall of the vent channel is substantially imperforate. Now it specifically says in the example illustrated in figures one through three. Now if you go to the example illustrated in figures one through three, it's clear that the top wall has no perforations at all. They're defining substantially imperforate as being shown specifically in figures one through three. Also, I guess what I want to know is what would you like us to think when we see the word substantially in that phrase in the spec? What does it mean? Well, again, they're defining substantially imperforate by specific reference to those figures. They're saying that the figures are showing a top wall that is substantially imperforate. The top wall shown in those figures don't have perforations. Now the other key point about this, in that same sentence, it goes further and therefore does not permit air to pass there through. Now referring to figure two, which shows the flow of air with the perforations in the sidewalls. If there are perforations in the top wall, air would flow through the perforations as well in the top wall. But the spec in that very same sentence specifically says it does not permit air to pass through. So what do you think it meant by substantially imperforate if it doesn't mean the holes of the size designated 25 in some of the figures? Does it mean smaller holes, holes that are so small that air can't pass through? I mean, I don't know. I'm just wondering what that means because you're right. It does say, as illustrated in the figures, and then you look at the figures and it doesn't appear to be any holes. And it also says that the air can't pass through. So that supports your position. But why does it say substantially imperforate instead of imperforate? Well, that's a good question, Your Honors. And that's something we've struggled with for a while. But this is, A, the only location in this entire specification that uses the word substantially imperforate. B, the claim say generally horizontal imperforate top wall. Not substantially imperforate, not generally imperforate, generally horizontal imperforate top wall. Generally, it can be used as a modifier, but it is modifying in the claim itself generally horizontal. Generally, throughout the entire spec, it's always used with regard to orientation of certain structures or the generally trapezoidal shape. So kind of like in that same column 3, beginning at line 39, where it says top wall 6 is disposed in a generally horizontal orientation. So, again, that is supporting your thinking that we should understand generally horizontal imperforate top wall being generally horizontal stop, and an imperforate top wall. Correct. And again, that's what the claims state. The bottom line is even if there's perforations in the top wall, A, what does substantially imperforate mean? If you have perforations, by definition, it would not be substantially imperforate. It wouldn't be imperforate. It would be perforate. And in fact, the inventors here exclusively used both terms in the claims themselves and in the spec, perforate and imperforate. They can't have an imperforate paper wall, anything with perforations in it, because if you did, it wouldn't necessarily by definition mean it's not imperforate. It would have perforations. The other thing the district court relied on was that use of a comma elsewhere in the claim where it's a generally flat comma imperforate, separating and making clear, I guess, according to the district court, that generally modifies flat only. What do we make of the fact that the generally horizontal imperforate top wall doesn't have such a comma? Your Honor, the use of the commas throughout the entire patent is pure happenstance and it shows no intent to the inventors. And a perfect example of that is if you read the specification, I'm trying to find the exact location where it does reference specifically, generally, there's an absence between the specification at column 2, line 60-61. The generally flat imperforate base portion without a comma. If you go to the claims, though, in claim 1, for example, in column 5, line 13 in claim 1, that is now claimed as a generally flat comma imperforate base portion. Commas throughout this entire usage of the patent is even inconsistent between the claims and the specification in different terms. It's just the common usage itself is pure happenstance and moreover, there's no grammatical rule that even supports it. There's a court's conclusion that placing a comma there would somehow, or not placing a comma, but somehow modify both horizontal and imperforate with the terminology of general. I have a question. If we were to agree with you on the claim construction, what other issues would be before the court? What would we do? We would have to remand, I suppose? Well, if claim construction, the claim construction would obviously vacate the permanent injunction, summary judgment of infringement, as well as other issues that are down below. Yes, a claim construction, in our mind, we would be able to go back down below because the accused device itself has perforations in the top wall. We would move that for summary judgment. As a matter of law, we would do not infringe the claim because the top wall is required in a claim as being imperforate. Okay, so I guess you're suggesting that there would be a need for you to refile a summary judgment motion for non-infringement rather than it just being completely over if we agreed with your claim? Well, correct, Your Honor. We initially, in 2010 when this case was originally filed, we intended to file a motion for summary judgment of non-infringement based upon this claim term, the Generally Horizontal Imperforate Top Wall. Pursuant to the district court's local rules, we had to have a pre-motion conference, at which point, Quality Edge said, well, there's a dispute regarding the claim construction. Okay, and we said, okay, let's go forward with claim construction. She adopted Quality Edge's claim construction and then they went ahead and filed a motion for summary judgment of infringement, at which point she then granted the motion for summary judgment of infringement. Okay, did you cross-move for non-infringement? No, we did not because of the claim construction. You did that under that claim construction, right? Correct, not with the claim construction district court adopted. So we're confronted with having to understand what does it mean in Claim 1 when it says Generally Horizontal Imperforate Top Wall. To do that, we need to look at the entire  And so I was looking at Dependent Claim 23, which says a vented soffit is set forth in Claim 22, wherein said imperforate top wall is spaced apart from said base portion a distance in the range of 0.4 to 0.5 inches. And so the fact that the dependent claim says said imperforate top wall, it doesn't say said generally imperforate top wall, or it doesn't say said generally horizontal imperforate top wall. Does that to you suggest that when you go back and look at the claim 1 for Generally Horizontal Imperforate Top Wall, the generally is really only defining horizontal and has nothing to do with imperforate top wall? You're absolutely correct, Your Honor. That dependent claim 23 with his reference to said imperforate top wall further, and we did raise this argument at the district court level, further emphasizes. Was there any dispute before the district court as to whether there were one or two perforations or whatever as to what substantially might have been? Or was it crystal clear that it was just the flat surface that you told us about? The dispute did not focus on the number of perforations, Your Honor, which brings me to the next point as set forth in our briefing. The district court actually held in its hands during the Markman hearing the accused device and was trying to construe the claims and trying to understand how the claims could be construed relative to the accused device, which we believe is the reason that she came to this conclusion in improper claim construction. I'm not sure I understand. Did you say there were, in the model that was given to the judge, that there was nothing remotely resembling perforations in the top wall? No, the accused device itself does include perforations in the top wall. And as compared with the patented device? Correct. Was there a sample? Correct, which is imperfect. Okay. If possible, Your Honor, I'd like to reserve the remaining time for rebuttal. All right, let's hear from the other side. Thank you. Mr. Gibson. May it please the court, let me get right to claim construction since that seems to be the issue. In applying Phillips, the district court first analyzed the claims and the district court recognized this court's precedence about the word generally being a word that's commonly used in patent claims to avoid a strict boundary to a specified parameter. What should we do with claim 23, which specifically says said imperfect top wall? I think claim 23 is a shorthand reference given the antecedent basis to the overall phrase. If you note later in that same claim 23, it says said base portion. It doesn't say said claim 1 for the base portion. It says generally flat common and pervert base portion. I think claim 23 is a, with the antecedent basis, is a shorthand reference, not well worded to the larger phrases in claim 1. So you don't think it necessarily indicates that the adverb generally is really about modifying horizontal and not modifying imperfect? No, I think given the antecedent basis and the fact that I think it's a shorthand reference to the entire phrase, I don't think it's changing what we get from the punctuation in claim 1 or from the spec. So it could have said top wall under that line of thinking. Correct. If it was a pure, clean shorthand, it would have said only said top wall. And it didn't refer to the horizontal or generally, just like with the base portion, it only referred to base portion. If you look at figure 2 and the other figures, don't show any perforations in the top wall. Correct, Your Honor. None of the figures in the patent show perforations in the top wall. This is the thrust of the entire specification. The contribution these inventors came up with was the idea of installing the perforations in the side wall to provide ventilation rather than in the top wall. That's really the way I read the spec. Yeah, I think that's perhaps a little bit more narrow. I think that the spec is talking about the prior included fully vented soffit so you could see all the perforations. And then you have unvented soffit where there are no perforations and you have this nice, clean look. The goal of this patent was to hide the perforations in a generally trapezoidal configuration which is necessary for it to be hidden. I don't think that in the illustrated exemplary embodiment, it has perforations just on the side walls. Whereas the accused device has the perforations not just on the side walls but also on the very lateral edges of the top wall, yet they remain hidden. So I think that what the invention is going for, what the patent is going for, is the concept of being able to hide these perforations in a generally trapezoidal shape so that they can't be seen. I think your strongest support in the specification is that part in column 3 where it refers to something being substantially imperfect. But then it does say, therefore does not permit air to pass through. So this substantially imperfect embodiment cannot allow air to pass through. How can there be a perforation and air doesn't pass through? There can't be. If there's a perforation, the air would have to pass through. So I think that when you look at later on in that same part of column 3, again the patent is focusing on the appearance of the soffit and that it's substantially identical with the exterior surface of the base portion, which is obviously, that's what can be seen from a view underneath the eaves. It's entirely imperfect. The trouble I have is I don't see in this particular passage or really anywhere in this patent, the inventors contemplating the clever idea that not only could you put perforations in the sidewalls, but maybe you could tuck away some perforations in the top wall that would actually be hidden from view when you have trapezoidal slanted sidewalls. There's nothing like that contemplated in the patent. Well, there's nothing illustrated that way. Or really described either. Well, I think that before describing the illustrated embodiment, the exemplary embodiment, the patent team made it clear that they were not intending that that was only an exemplary embodiment. That's actually at column 2, line 47 through 57. And then again after describing the exemplary embodiment, column 5, line 3 through 9, again says that modifications to that are within the scope of the invention. And in between while describing it, I think that the inventors have actually added the word substantially and focused on the appearance of the soffit as it would appear when you're viewing it from underneath the eaves. So you weren't seeing the perforations. So there is nothing explicit in the drawings that show perforations on top wall. But I think when you look at this course precedents about not reading in limitations from the drawings into the claims, we're starting to run afoul of that when we only focus on the drawings. But the precedent, there's a comment on precedent. Precedent also says you can't claim more than what you've described and enabled in your specification. Correct. So I'm just looking for where the specification describes and enables perforations in the top wall. I think the specification certainly doesn't show it. I think that the concept of focusing again on the appearance of the soffit and the generally trapezoidal cross-section so that those can be hidden and not seen is broad and it's not limited to what's shown in figures 1 and 2. I actually agree with you as far as what your specification discloses. It's a problem I'm having. And it seems like it's probably a good invention, but the way it's described is consistent with the way it's claimed, which says that top wall is imperforate. Whether it's generally imperforate, the question is whether generally modifies imperforate, but even generally imperforate, substantially imperforate,  And so that's the way it's claimed. Well, no, if it's generally imperforate or substantially imperforate, most of it would have to be... Underneath this course precedent, you're allowed some deviation from the specified parameters, so you'd have some... But as we discussed before, if it doesn't allow air to go through, then it doesn't have perforations. Well, that part of the spec in describing the illustrative embodiment, correct. I don't think that the claims are that narrow. I think that if you have something that is generally... If you look at a claim that's generally imperforate, the vast majority of the accused product is absolutely imperforate, where the very lateral edges of that top wall are where the perforations are. And the air certainly does pass through those perforations. So that would be in conflict with this statement in the spec, where it says, therefore does not permit air to pass through. The fact that the accused device has these two long rows of perforations that allow lots of air to pass through. The accused device does have the rows that allow air to pass through. Which, I guess the point is, in conflict with this sentence that does say substantially imperforate, but at the same time, in the same breath, also says, therefore does not permit air to pass there through. Yes. And that's true. But I think when you look at the beginning of that sentence, it's focusing on the exemplary embodiment of the figures one through three. Not necessarily limiting ourselves to... Given the other languages of the patent, I don't think that we're necessarily limited to what's shown in figures one through three. I'd like to ask you the same question I asked the appellant here, which is, if we were to disagree with the district court's claim constructions, what issues would remain for us to consider on appeal? And is a remand appropriate? I think a remand would be appropriate. I mean, obviously, if we disagree with the district court's claim interpretation, the summary judgment of infringement would have to be set aside and reviewed on remand. I think that there would be a doctrine of equivalence argument, which is a fact argument that has not been developed yet. Given the court's interpretation and the fact that there was a literal infringement, there would be a doctrine of equivalence issue on the element by element, all elements rule. Have you preserved that? Yes. If you look at the July 20, 2010 conference that was raised and also in the follow-up to that with the identification of claims. Okay. So again, hypothetically, if we disagreed on the claim construction, that wouldn't really end this case and we would still have to confront the validity challenge, which I can't be sure if that's just an affirmative defense or a counterclaim. And likewise, we'd also have to address the issue of whether it was correct to dismiss the invalidity defenses that were deemed to be insufficiently pled. Yes, yes, yes. That's correct. I only addressed the summary judgment of infringement issue. With respect to the motion to dismiss their counterclaim of invalidity for not having been pled appropriately under Iqbal Twombly for just the bare bones pleadings with reference to the patent statute, as well as affirmative defenses for failure to meet the fair notice standard under the Sixth Circuit law, that would have to be addressed as well because that was a dispositive ruling made by the district court where she decided that the that the Olex's reliance on matters outside the claims was inappropriate and responsible to a motion. And then she exercised her discretion in denying the request for leave to amend. Okay. Any more questions? Okay. Thank you, counsel. Mr. Ranser. Thank you again, Your Honors. I'd just like to address a couple points specifically with regard to the ability or the attempt by the inventors to reserve inventions clearly outside the scope of the inventions. I'd like to draw your attention also then with regard to those paragraphs that Mr. Gibson just referenced, but in particular column two, line 58, where it specifically starts and states the reference number of figure one generally designates a vented software panel embodying the present invention. It doesn't say an example of the present invention. It doesn't say an embodiment of the present invention. It says the figures show the present invention, which clearly dictates and states this is what the inventors invented. The other thing I'd like to point out again, Your Honors, is the invention itself, when you read the specifications, they claim state and the specifications state that the entire perforate sidewalls are hidden from view from a position underneath the eaves. Again, it doesn't teach or disclose how you could possibly have perforations in the topwall that A, would not allow air to pass through, but then B, even if there are perforations in the topwall, how can you possibly hide these perforations? It says that nowhere in the spec. The other thing I'd like to address real quick, Your Honor, as set forth in our briefing with regard to the dismissal of the counterclaims of the affirmative defenses, we are also appealing as well the abuse of discretion standard there. The invalidated defenses were dismissed five years into the case. We were not able to replete them. We asked for leave as an alternative relief after the judge decided let's brief the issue with a new pleading standard which was not even known at the beginning of the case as set forth by the judge handing it down to the magistrate requiring us to brief the issue as far as what the correct pleading standards were. And then after the correct pleading standards were determined, then we were required to brief whether or not the invalidity counterclaim and invalidity affirmative defenses then met that standard. But the other point to make there, Your Honor, is within the same invalidity counterclaim the plaintiff quality problem still raised issues of 112 which the plaintiff quality has never complained about. If there's no further questions, Your Honor. Any more questions? Thank you. Thank you both. The case is taken under submission.